# IN THE COURT OF APPEALS OF IOWA

No. 18-1811
Filed August 21, 2019

**BRETT V. SULLIVAN,**
     Plaintiff-Appellant,

**vs.**

**WEST CENTRAL COOPERATIVE and FARMLAND MUTUAL INSURANCE COMPANY,**
     Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.


The claimant appeals the district court's ruling on judicial review affirming the award of the Workers' Compensation Commissioner. **AFFIRMED.**


Thomas M. Wertz of Wertz & Dake, Cedar Rapids, for appellant.

Jeffrey W. Lanz of Huber, Book, Lanz & McConkey, P.L.L.C., West Des Moines, for appellees.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Brett Sullivan experienced a workplace injury in October 2011 when the wheel loader Sullivan was driving was struck by a train. Sullivan's resulting injuries necessitated a lengthy hospital stay and a number of surgeries. West Central Cooperative, Sullivan's former employer, and Farmland Mutual Insurance Company, the employer's insurer, admitted the injury. They paid Sullivan lost time and permanent partial disability benefits and covered all of his medical bills.

Six issues arising from the workplace injury were contested and presented to a deputy commissioner of the Workers' Compensation Commission.[1] One of the issues was whether Sullivan had a mental-health condition caused by the workplace accident. The deputy commissioner found:

> There are two experts who favor [Sullivan's] position that he has a mental component stemming from his work injury. The experts are Dr. Mills and Dr. Gallagher. Their opinions were detailed in preceding paragraphs. There are two experts who expressly disagree with Dr. Mills and Dr. Gallagher. They are Dr. Chesen and Dr. Andrikopolous. Their opinions are also detailed in preceding paragraphs. The two defense experts maintain [Sullivan] is malingering and he has no psychiatric diagnosis.
> In this case, the old adage, "actions speak louder than words" applies. For more than two years after the work injury, claimant attended numerous medical appointments. He returned to work and performed his duties, even though he had faced several surgeries, physical therapy sessions, and had to use such assistive devices as wheelchairs and walkers to perform his duties. Throughout that timeframe, [Sullivan] did not report to any of his medical providers or to his supervisors he was having depression, anxiety, or PTSD. [Sullivan] did not request treatment or drug therapy for any mental health issues. His numerous treating

---

[1] Specifically, the issues for resolution before the deputy commissioner included: (1) the appropriate weekly rate based on a determination whether Sullivan had a common law marriage at the time of the injury, (2) the extent of Sullivan's permanent disability, (3) whether Sullivan suffered a mental health condition as a result of the work injury, (4) the credit defendants were allowed to take based on previously paid benefits, (5) the costs, as related to requests for admissions, and (6) which party would be taxed costs. Only one of the issues remains in dispute, and we do not discuss the others.

physicians did not observe symptoms consistent with any mental conditions. Moreover, April Sullivan[2] often attended the medical appointments with [Sullivan]. She never indicated to the medical providers there was any change in [Sullivan's] mood or in his relationship with the family. [Sullivan] is not requesting medical care for any claimed mental condition.

It is only when [Sullivan] retained the services for his own experts in the fields of neuropsychology and psychiatry did [his] mental health become an issue in the case. Even then, [he] did not seek treatment for any depression, anxiety or PTSD. It is the determination of the undersigned[:] [Sullivan] does not have a mental condition that is the result of his work injury on October 2, 2011.

Sullivan challenged the deputy commissioner's determination and argued the award of 60% industrial disability must be reconsidered in light of this incorrect determination.

The deputy's ruling was adopted by the commissioner[3] and affirmed in a final agency decision.[4]

Sullivan sought judicial review. He maintained the commissioner ignored all expert opinions in the record in rendering his causation findings and making the determination Sullivan's workplace accident did not cause a mental-health injury. The district court disagreed with Sullivan's claim, noting the ruling adopted by the agency "walked through each of the expert medical opinions in depth," with two experts who opined Sullivan had suffered a mental-health injury

---

[2] Sullivan and April formally divorced in April 2011, a few months before the workplace injury occurred. After Sullivan's injury, they resumed a relationship. One of the issues before the deputy commissioner was whether April and Sullivan had a common law marriage at the time of the incident, and the deputy commissioner determined they did not. It is unclear what their status is at this time; Sullivan refers to April as his wife throughout his appellate brief.

[3] The commissioner delegated authority to a different deputy commissioner to issue the final agency decision on appeal. We ascribe all actions taken by the deputy commissioner acting on behalf of the commissioner to the commissioner.

[4] The final agency decision modified in part the deputy's ruling on the credit the defendants were entitled to receive due to the previously paid benefits; that determination is not at issue here.

as a result of the workplace injury (Dr. Mills and Dr. Gallagher) and two that opined he did not (Dr. Chesen and Dr. Andrikopoulous). The commissioner did not explicitly find doctors Chesen and Andrikopoulous more credible than the other two experts, but he identified a number a factual findings—stemming from the reports of Chesen and Andrikopolous—to support the conclusion Sullivan's workplace accident did not cause him to suffer from a mental-health condition. The district court affirmed the agency's ruling, stating:

> Many of the factual findings . . . cited to as a reason for the determination that Sullivan did not suffer a mental condition are reflected in the medical expert reports that align with [the commissioner's] determination. Just as in [*Schutjer v. Algona Manor Care* Center, 780 N.W.2d 549, 562 (Iowa 2010)] it is evident the commissioner chose to rely on certain experts "because those opinions were more consistent with the factual findings made by the commissioner." Based on the factual circumstances of this case, the commissioner was required to evaluate the timing of Sullivan's complaints of a mental condition and determine whether he agreed with Dr. Mills and Dr. Gallagher that Sullivan had experienced a late onset of a mental health condition nearly two years after the work injury or whether he agreed with Dr. Chesen and Dr. Andrikopoulos that the timing was "peculiar" and Sullivan did not have a mental condition. The court finds that, read in context, the court is able to identify the evidentiary basis of the commissioner's determination. Therefore, the court finds the commissioner did not err as a matter of law or act in violation of a provision of law.
>
> The court also finds the decision is supported by substantial evidence, did not fail to consider important evidence, and is not irrational, illogical, or wholly unjustifiable. The commissioner walked through the medical reports of Dr. Chesen, Dr. Mills, Dr. Gallagher, and Dr. Andrikopoulos. As the commissioner explained, two experts supported Sullivan's claim of a mental condition and two experts disputed it. Notably, Dr. Andrikopoulos determined that Sullivan is malingering, a determination uniquely tied to Sullivan's credibility. After having the opportunity to hear testimony and view the credibility of Sullivan, in addition to all other evidence, the commissioner's decision aligned with Dr. Chesen and Dr. Andrikopoulos and listed factual findings those doctors had relied upon. In addition, the commissioner noted that Sullivan had treated with a "myriad of physicians for numerous problems related to his work injury" and that "Not one of the treating physicians observed

symptoms of depression, anxiety, or aspects of posttraumatic stress disorder." The commissioner is allowed to weigh all of the evidence in determining whether to accept or reject expert opinions.

(Citations omitted.)

Sullivan appeals the district court's ruling on judicial review affirming the award of the commissioner. He maintains, "This is not a substantial evidence appeal where the commissioner chose the opinions of one expert over the competing opinions of another expert." We disagree.

As in *Shutjer*, it is apparent from the commissioner's decision that he questioned the sincerity of Sullivan's mental-health complaint because none of the many treating doctors noticed and Sullivan did not report any symptoms for more than two years after the accident—not until February 2014 when Sullivan requested authorization for treatment with a pain psychologist to address symptoms of depression. 780 N.W.2d at 562 (noting the commissioner concluded the claimant lacked credibility because the commissioner believed the claimant would have reported symptoms to a treating physician if they existed as later described). In a similar vein, Dr. Andrikopolous's report stated, "[T]he interview suggests PTSD and mild head injury are not present" and offered the explanation of "malingering." In support of his opinions, Dr. Andrikopolous offered the following: "It seems if we accepted at face value the severity of [this] patient's cognitive difficulties, to report these symptoms after such a long period of time is a little peculiar"; "[T]he patient was assessed for cognitive difficulties for the first time over three years after a mild head injury, long after the symptoms should have resolved rather than just begin to be the focus of assessment"; and, "If we assume this level of psychological distress, then not seeking psychiatric

treatment when it was covered by workers' compensation requires an explanation." Similarly, Dr. Chesen opined that Sullivan did not have a psychiatric diagnosis and indicated it was "difficult to reconcile" the delay in Sullivan's reported symptoms. Additionally, the commissioner noted that at least one of the medical reports seemed to directly contradict Sullivan's claims; Dr. Peters—Sullivan's personal physician—noted in November 2012, "Brett Sullivan was in today [and] is generally feeling well. This is the best I have seen Brett doing since his accident in a year or so. He is smiling, generally doing well."

Here, the lack of causation, as determined by the commissioner, is supported by the opinions of Dr. Chesen and Dr. Andrikopolous. *See Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) ("Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission. . . . Medical causation 'is essentially within the domain of expert testimony.'" (citation omitted)). The commissioner questioned Sullivan's credibility as it related to reporting a mental-health condition and those doubts were mirrored in the reports from Dr. Chesen and Dr. Andrikopolous. While the commissioner did not explicitly state he was relying upon those doctors' analysis, we are able to see "the path he has taken through conflicting evidence." *Schutjer*, 780 N.W.2d at 560 (citation omitted). This is enough for us to agree with the district court's conclusion that substantial evidence support the commissioner's determination. *See Shutjer*, 780 N.W.2d at 558 ("Because the commissioner is charged with weighing the evidence, we liberally and broadly construe the findings to uphold his decision." (citation omitted)); *see also Sellers v. Emp't Appeal Bd.*, 531 N,W,2d 645, 646 (Iowa

1995) ("The administrative process presupposes judgment calls are to be left to the agency. Nearly all disputes are won or lost there." (citation omitted)).

We affirm the district court's ruling on judicial review affirming the decision of the Workers' Compensation Commissioner.

**AFFIRMED.**